UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-133-KSF

KATHERINE A. ROSS                                                                                              PLAINTIFF

v.                                           **OPINION & ORDER**

PRUDENTIAL INSURANCE COMPANY OF
AMERICA                                                                                                         DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court on the plaintiff's motion for judgment reversing the administrative decision denying the plaintiff benefits under the terms of a disability retirement plan issued and administered by the defendant. [DE # 10] Inasmuch as the defendant has filed a timely response, and the time for the plaintiff to file her reply has expired, this matter is ripe for review.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The plaintiff, Katherine A. Ross, was employed by Tokico USA Inc. ("Tokico") in Berea, Kentucky from 1996 until October 14, 2002. During her employment at Tokico, Ross held the position of assembler/machine operator, which involved working with and around machinery, required a high school diploma, and involved frequent standing, carrying, maneuvering, walking, reaching, handling, fingering, and lifting. The position also involved frequent motions of the shoulder, elbow, wrist, finger, hip and neck. While employed by Tokico, Ross was covered under the terms of a long-term disability retirement plan issued and administrated by the defendant, Prudential Insurance Company of America ("Prudential").

1

Ross suffered a job-related back injury in October 2001 which required her to be off work for a period of time. She received treatment from Dr. Ralph Compton, a general physician, and Dr. William Lester, a back specialist. While still off from work on November 23, 2001, Ross suffered a seizure-type event at a retail establishment during which time she felt weak and light headed, then fell to the floor striking her head. Ross was treated at the local emergency room and released.

Ross was examined by Dr. Lester on November 26, 2001 for her complaints of back pain. He ordered an MRI of her lumbar spine to rule out disc herniation, and prescribed medication for her back pain. She was released to return to work with certain restrictions, including no lifting over 20 pounds and a 5 minute break from standing every hour.

Ross was subsequently referred to Dr. Jalil Shojaei, a neurologist, in January 2002. Dr. Shojaei examined Ross and performed some objective diagnostic testing which corroborated Ross's subjective reports of seizures. He prescribed medication for her back pain and seizures, but did not impose any work restrictions. However, Dr. Shojaei did advise Ross that under Kentucky law, she was restricted from driving until she is seizure free for three months.

Ross continued to receive treatment for her back injury, and ultimately underwent a left L4 laminotomy with L4-5 diskectomy, performed by Dr. Steven Kiefer, a neurosurgeon, on February 11, 2002. Following this procedure, Ross undertook a course of rehabilitation, and ultimately was released to return to work by Dr. Kiefer on July 8, 2002. At that time, her only restriction was no lifting over 35 pounds, followed by a return to normal duties four weeks thereafter.

Throughout 2002, Ross continued to receive treatment for her seizure disorder from Dr. Shojaei, including adjustments in the medications prescribed to control her seizures. However, due to an increase in frequency of the seizures, Dr. Compton concluded in October 2002 that Ross was

unable to work. Ross left her employment at Tokico effective October 14, 2002 and has not worked at Tokico since that date.

Ross applied for and received short-term disability benefits on the grounds that she was restricted from working around machinery, a component of her job at Tokico. Prudential continually reviewed Ross's eligibility for benefits, and noted that she was restricted from working around machinery and that time was needed to allow for adjustments to her seizure medications. On April 12, 2003, Ross began receiving long-term disability benefits. However, on September 3, 2003, Ross was informed that, as of August 1, 2003, she no longer met the requirements for long-term disability benefits. Ross asked for reconsideration, arguing that her back pain caused stress, and the stress caused seizures. Because Ross had been released to return to work by her back surgeon, Prudential rejected Ross's request for disability benefits due to her back pain. However, because Dr. Shojaei was continuing to adjust her seizure medication, Prudential overturned the decision, reinstated her disability benefits, and scheduled a review for six months.

Then, on March 12, 2004, based on medical records from Dr. Shojaei and Dr. Compton, Prudential informed Ross that she was no longer eligible for long-term benefits effective March 1, 2004. At this time, Prudential noted that Ross had only one seizure, on November 19, 2003, which is described in Dr. Shojaei's office visit notes as follows: "felt it coming on, and had some weakness. . . was not confused, no jerking, etc." Although the records indicate that Ross had another seizure in January, 2004, she did not seek medical treatment. Prudential determined that two minor seizures in 2 ½ months does not support an ongoing disability. Again, Ross elected to appeal this decision, and on June 3, 2004, Prudential reinstated Ross's long-term disability benefits based upon her seizure disorder effective March 1, 2004. At this time, Ross was informed that the 24 months of her

"own occupation" payments would end on April 11, 2005, and that Prudential would do a detailed examination of her claim in advance of that date.

As part of that evaluation, Ross was interviewed by a Prudential claims manager who reviewed her medications, current health and activities. She reported that she had one seizure in the last three months. As for the reasons she believed she was entitled to disability benefits, Ross stated that she did not believe anyone would hire her due to her seizures and back pain. The claims manager reviewed updated medical records from Dr. Compton, Dr. Shojaei, and Dr. Lester. Dr. Lester reported that although Ross continued to complain of low back pain, she was not doing the prescribed exercises. He completed a work status form which indicates that Ross could stand for two hours, walk for three hours and sit for six hours. Moreover, Dr. Lester found that Ross could frequently lift ten pounds and occasionally life twenty pounds, but was limited from carrying fifty to one hundred pounds. She was capable of occasionally climbing, bouncing, bending, kneeling, squatting, crawling and reaching more than eighteen inches overhead. She was restricted from working around machinery or driving automotive equipment.

Dr. Compton also reviewed Ross's work status and opined that she was capable of standing, sitting and walking continuously for eight hours, that she could frequently lift ten to twenty pounds, continually carry ten to twenty pounds, but should not climb, be around unprotected heights, moving machinery, or drive automotive equipment. However, due to her "uncontrolled" seizures, he opined she was disabled from working.

Dr. Shojaei's records revealed that Ross had two seizures in one day in June 2004, two in July 2004, one in October 2004 and one in November 2004. Dr. Shojaei described Ross's course as "stable." The seizures were described as brief with no incontinence, no loss of consciousness, and

confusion for one to two minutes. Other than restricting Ross from driving, Dr. Shojaei did not restrict Ross from any other work activities.

A physical therapist employed by Prudential reviewed the medical reports and assessed Ross's ability and limitations in the workforce. As to the inconsistencies between Dr. Lester and Dr. Compton, the physical therapist followed the more restrictive limitations imposed by Dr. Lester, a specialist. Based on these restrictions and limitations adopted by the physical therapist, a Certified Rehabilitation Counselor in Prudential's vocational rehabilitation department completed an assessment of Ross's employability. She determined that Ross could work in a light occupation which involved no driving and no exposure to moving machinery. A transferable skills analysis was performed, and several jobs were identified which met these requirements as well as providing sufficient income to meet the policy's definition of gainful employment. As a result, Ross was informed that her disability benefits were terminated effective April 12, 2005 at the end of the "own occupation" period.

Ross appealed this decision, arguing that she did not believe anyone would hire her due to her seizures and severe back pain. Although she submitted no new medical evidence, she did note that she was scheduled to see Dr. Shojaei on May 10, 2005. Prudential elected to wait for the results of this visit before ruling on Ross's appeal. The records from the May 10, 2005 appointment with Dr. Shojaei revealed that Ross had one seizure on April 20, 2005 during her sleep as reported by her husband, and another very brief episode on April 22, 2005 which involved five seconds of feeling strange, almost falling, but no loss of consciousness, no incontinence, no jerking and minimal confusion. She also reported two seizures in May 2005, including one involving some jerking for fifteen seconds and slight confusion. Dr. Shojeai did not restrict Ross from working, and has never

identified Ross's back pain as a cause of her seizures.

Prudential's internal physician reviewed Ross's medical history and confirmed that Ross was capable of performing light work, that her seizures were sufficiently under control to return to work with restrictions of no driving, safety sensitive work, or work around machinery. Accordingly, Prudential elected to uphold its earlier decision denying benefits effective April 11, 2005.

Ross filed a second appeal, supported by a letter from Dr. Compton, who opined that Ross "has the functional ability to continue with the activities of daily living . . . she [can]not return to any type of occupation because of her ongoing and unstable seizure condition . . . I do not feel that she would be able to engage in any significant stressful occupation as far as increased pace or of personal stress because of the potential for her exacerbation of her seizure disorder. I also feel it is unlikely that she would ever be hired by any employer because of her seizure disorder." However, no tests or other data support Dr. Compton's opinion that the stress of working would exacerbate her seizure activity or that her mild seizures would prevent her from a performing the duties of a sedentary or light duty job identified by the vocational rehabilitation specialist. Dr. Compton did not suggest any stress related treatment or prescribe any stress management programs.

Prudential elected to refer Ross's medical records for outside medical review. Dr. Valerie Ito, a physician board certified in physical medicine and rehabilitation, confirmed that Prudential had correctly assessed Ross's medical condition. Consequently, Prudential terminated Ross's benefits effective April 11, 2005. Having exhausted her administrative remedies, Ross filed this suit.

## II.   STANDARD OF REVIEW

This is an ERISA action arising under 29 U.S.C. § 1132(a)(1)(B). As an initial matter, this Court must determine the standard of review applicable to Prudential's decision to deny disability

benefits to Ross. Generally, a *de novo* standard of review applies to decisions of plan administrators "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). When an ERISA plan confers discretion upon an administrator, the administrator's determinations must be reviewed under the "arbitrary and capricious" standard. *Perez*, 150 F.3d at 555; *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1012 (6th Cir. 1996). The "arbitrary and capricious" standard is the least demanding form of judicial review of administrative actions. *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693-94 (6th Cir. 1989). When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not "arbitrary and capricious." *Id.*

The plan provisions relevant to the instant case reveal the following. First, the plan defines disability as follows:

> You are disabled when Prudential determines that:
>
> \* you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> \* you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

The plan further provides:

> We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

Finally, the Summary Plan Description states:

> This Group Contract underwritten by the Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential

> Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

Well-established case law from the United States Court of Appeals for the Sixth Circuit reveals that these provisions confer sufficient discretionary authority on an administrator to require application of the "arbitrary and capricious" standard of review in this matter. *See Yeager v. Reliance Standard Life Insurance*, 88 F.3d 376, 381 (6th Cir. 1996)("satisfactory proof of total disability to us"); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991)("on the basis of medical evidence satisfactory to the Insurance Company").

While Ross cannot point to any plan language which limits Prudential's discretion, Ross does argue that Prudential's role as both claims administrator and payor of benefits creates a conflict of interest that requires application of the *de novo* standard of review. In recent years the Sixth Circuit has provided direction for district courts facing the issue of how to deal with these alleged conflicts of interest. Specifically, the Sixth Circuit has held that such a conflict of interest does not require reviewing courts to abandon the "arbitrary and capricious" standard. Rather, the "arbitrary and capricious" standard applies in spite of the conflict of interest, "but application of the standard should be shaped by circumstances of the inherent conflict of interest." *Miller*, 925 F.2d at 983. Additionally, the Sixth Circuit has held that reviewing courts should not consider a conflict of interest unless the plaintiff provides significant evidence that the denial of a claim was motivated by self-interest or bad faith. *Peruzzi v. Summa Medical Plan*, 137 F.3d 431,433 (6th Cir. 1998).

In this case, Ross has produced no evidence to suggest that Prudential's decision was in any way tainted by its role as both claims administrator and payor or that the individual claims

administrator's actions were motivated by self-interest or bad faith. Accordingly, Ross's bare conflict of interest allegation does not affect the Court's review of this case under the "arbitrary and capricious" standard of review.

### III. ROSS'S MOTION FOR JUDGMENT

Under the Group Insurance Policy issued by Prudential to Tokico, Prudential defines disability as follows:

> You are disabled when Prudential determines that:
>
> \*    you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
>
> \*    you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

After receiving disability benefits for 24 months, the plan's definition of "disabled" becomes more strict:

> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

In other words, during the first 24 month period the claimant must show that he or she is unable to perform the duties of his *own* occupation, and thereafter must show that he or she is unable to perform the duties of *any* occupation. At issue in this case is Prudential's decision to deny disability benefits to Ross beyond the twenty-four month period, due to her inability to engage in any gainful occupation for which she is reasonably fitted by her education, training or experience. Ross bears the burden of proving that she is currently disabled from any occupation. *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 985 (6th Cir. 1991).

### A.     ROSS'S ARGUMENT

Ross first argues that Prudential's decision denying benefits ignored the unequivocal opinion of Dr. Compton who opined that Ross was disabled based upon her seizure condition, and instead relied on the opinions of a non-treating doctor who merely reviewed the records. Ross notes that the reviewing doctor, Dr. Ito, did not opine as to whether her seizure condition precludes her from working.

Ross also contends that Prudential wrongly focused on Ross's residual physical functioning. Although Ross concedes that she maintains the ability to engage in sedentary to light activities, she argues that the nature and extent of her seizure disorder, including the randomness at which the seizures occur, create a dangerous situation for herself and others in the workplace. As a result, she argues that she could not be hired by any employer.

Finally, Ross argues that Prudential ignored the finding of the Social Security Administration that she is disabled. While the Social Security award is not determinative, Ross argues that Prudential wrongly disregarded the Social Security Administration's finding that she was disabled. For these reasons, Ross argues that Prudential's decision denying her benefits should be reversed.

### B.     PRUDENTIAL'S ARGUMENT

Prudential argues that Ross has not met her burden of showing that she is currently disabled from performing any gainful occupation. To the extent that Ross relies on the opinion of Dr. Compton, Prudential argues that while Dr. Compton opined that her seizure condition was disabling, the specialists treating Ross (Dr. Lester, the back doctor, and Dr. Shojaei, her neurologist) have not restricted Ross from working. According to Prudential, Dr. Ito, the reviewing doctor, did not opine on Ross's ability to work, but rather reviewed the nature and scope of Ross's illnesses and their

potential for worsening. Dr. Ito's findings, coupled with the medical reports from Dr. Lester and Dr. Shojaei, should trump Dr. Compton's finding of disability.

With respect to Ross's seizures, Prudential argues that her seizure disorder is not disabling, and that the jobs selected for her were safety sensitive. According to Prudential, Ross has not come forward with any evidence that she could not be hired, and notes that the Americans with Disabilities Act requires employers to accommodate people with disabilities.

As to the Social Security Administration's award of disability benefits, Prudential argues that the award was made in 2003 when Ross's seizures had not yet stabilized, and when Prudential also considered Ross disabled. Prudential notes that the Social Security Administration was required to consider other factors, including her ability to drive to and from work, and to accord deference to her attending physician, which Prudential is not required to do under the policy.

Simply put, Prudential argues that its decision denying benefits was rationally based and has a reasonable basis in the evidence. Inasmuch as this decision was not arbitrary and capricious, Prudential argues that its decision should be affirmed.

**IV. ANALYSIS**

Dr. Compton opines that Ross cannot work due to her "unstable seizure condition." Although Dr. Compton emphasized stress as a key component in exacerbating Ross's seizures and preventing her from working, he did not prescribe any stress management programs. Moreover, Dr. Compton implicitly deferred to Dr. Shojaei, Ross's neurologist, by stating that he has urged Ross to re-contact Dr. Shojaei, noting that "her seizure disorder is her primary disabling condition." Ross, however, has not come forward with any evidence from Dr. Shojaei to support Dr. Compton's opinion.

In the most recent records from Dr. Shojaei, he describes Ross's condition as stable, and has

not restricted her from working. Thus, the one doctor actually treating Ross for her seizure disorder has not opined that she is disabled. Similarly, Dr. Lester, Ross's back doctor, has not opined that Ross is unable to work.

While Prudential's reviewing physician, Dr. Ito, did not actually opine that Ross was able to work, she did find that there was no expected change in Ross's seizure condition or back condition. Dr. Ito noted that Ross reported walking three miles per day, and was not involved in any stress management programs. For these reasons, it was not unreasonable for Prudential to reject the finding of Dr. Compton and instead rely on the opinion of her specialists that she is not restricted from working.

Ross's empty assertion that no one would hire her due to her seizures does not satisfy her burden of proof. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, was passed for the purpose of preventing such discrimination in the workplace. *See E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 853 (6th Cir. 2001). Prudential conducted a thorough transferable skills analysis, and determined that based on her abilities and limitations, various safety sensitive jobs existed which provided sufficient income to meet the policy's definition of gainful employment.

Prudential's claim determination is not automatically arbitrary and capricious because it conflicts with the Social Security Administration's determination that Ross is disabled. *Calvert v. Firstar Finance, Inc.,* 266 F.Supp.2d 578, 585-86 (W.D. Ky 2003) (Social Security determinations are not binding on an ERISA plan administrator and do not in and of themselves render a denial of benefits arbitrary and capricious), *rev'd on other grounds*, 409 F.3d 286 (6th Cir. 2005). The Social Security Administration's determination of disability resulted from the application of federal administrative agency rules and rulings that are different from the terms of the Plan and that do not

apply outside of the Social Security program. For instance, the ALJ was required to consider such factors as the state of the national economy and Ross's age and education. *See Black & Decker Disability Plan v. Nord,* 123 S.Ct.1965, 1971 (2003) (noting that there are critical differences between the Social Security disability program and ERISA benefit plans).

Prudential's decision to deny benefits to Ross was not arbitrary and capricious. Prudential thoroughly reviewed the medical evidence, determined Ross's job skills and limitations, performed a transferable skills analysis, and located other jobs suitable for Ross which met Prudential's definition of gainful employment. Accordingly, Ross's motion for judgment will be denied.

IV. **CONCLUSION**

Based on the foregoing, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that :

(1) Ross's motion for judgment reversing the administrative decision denying long-term disability benefits [DE # 10] is DENIED; and

(2) judgment will be entered contemporaneously with this opinion and order in favor of Prudential.

This February 20, 2007.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**